UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**VICTORIA GOKEE,**
7 Victoria Lane
Ashland WI 54806

        Plaintiff,

        Case No. 26-cv-180

vs.

**THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,**
720 East Wisconsin Avenue
Milwaukee, WI 53202

Registered Agent for Service of Legal Process:
The Lakes Community Health Center, Inc.
7665 US Highway 2
Iron River WI 54847-4690

        Defendant.

---

## COMPLAINT

---

The Plaintiff, Dr. Victoria Gokee, by Hawks Quindel, S.C., for her complaint against the above-named Defendant, hereby states as follows:

### PARTIES

1.    Plaintiff is an adult resident of the State of Wisconsin and currently resides in Ashland, Wisconsin.

2.    Defendant, Northwestern Mutual Life Insurance Company, on information and belief is a corporation organized under the laws of Wisconsin, licensed to do business in Wisconsin.

01079188

3. On information and belief, Defendant insures a long-term disability insurance plan for The Lakes Community Health Center, Inc. ("the Plan"), an employee welfare benefit plan subject to ERISA as amended, that has been in effect since at least November 1, 2022 and continues to the present time.

## JURISDICTION & VENUE

4. As described more fully below, this is an action by a participant in an employee welfare benefit plan governed by ERISA to recover benefits due under the terms of the Plan pursuant to ERISA § 502(a)(1)(B).

5. Jurisdiction over this action is conferred upon this court because the claims herein arise under ERISA.

6. Venue is proper in the Western District of Wisconsin pursuant to ERISA § 502(e)(2) and 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to these claims occurred in this district and, because, in substantial part, the breaches asserted herein took place in this district.

7. Plaintiff's administrative remedies have been exhausted as a condition precedent to filing this action.

## FACTS

8. Plaintiff is a former Dentist for The Lakes Community Health Center, Inc., d/b/a North Lakes Community Clinic.

9. Prior to the onset of her disability, Plaintiff was earning approximately $225,000 per year, or $18,750 per month.

10. During the course of Plaintiff's employment, Plaintiff became eligible for certain employee benefits, including the long-term disability (LTD) coverage provided by the Plan.

11. Plaintiff was hired by The Lakes Community Health Center in September 2024.

12. Plaintiff's coverage under the Plan began on November 1, 2024.

13. On or about March 16, 2025, Plaintiff experienced a fall while playing lacrosse, which injured her right hip and left ankle.

14. Plaintiff sought medical treatment on March 17, 2025 and, in addition to left ankle pain, reported new shooting pain in her right hip.

15. Plaintiff ceased working on or about June 16, 2025, due to bilateral hip pain.

16. Plaintiff underwent a right hip arthroscopy and right labral tear repair on June 20, 2025.

17. Plaintiff subsequently underwent a left hip arthroscopy.

18. Following the onset of her disability, Plaintiff applied for short-term disability benefits with Defendant.

19. Defendant approved Plaintiff's claim for short-term disability benefits through the maximum benefit period.

20. Plaintiff subsequently applied for LTD benefits with Defendant.

21. On information and belief, Plaintiff's LTD benefit is worth $10,000 per month, which is the maximum benefit under the policy.

22. Defendant was responsible for determining whether Plaintiff was eligible for LTD benefits.

23. Defendant was responsible for paying Plaintiff's LTD benefits.

24. Defendant denied Plaintiff's LTD benefits claim in its entirety, claiming that her condition was due to a pre-existing condition.

25. The Preexisting Condition period under Plaintiff's policy was 90 days prior to her coverage effective date, or August 3, 2024 to October 31, 2024.

26. Under the policy, a Preexisting Condition is defined as a, "mental or physical condition for which you have consulted a Physician or Practitioner, received medical treatment or services, or taken prescribed drugs or medications" during the lookback period.

27. Plaintiff timely appealed Defendant's denial of Plaintiff's benefits claim.

28. In Plaintiff's appeal letter, she explained that she was previously treated for pubic symphysis diastasis, which is a completely separate condition than the ones for which she underwent surgery (femoroacetabular impingement and a torn labrum.)

29. In support of her appeal, Plaintiff submitted medical documentation, including a letter from Dr. Alexander Provost dated November 19, 2025.

30. Dr. Provost noted that his treatment to Plaintiff's hip "was in response to her pregnancy status, the shifting of the femurs, and surrounding musculature affecting the femur's position."

31. Dr. Provost stated that he did not suspect a labral tear during his treatment of Plaintiff prior to her March 2025 injury, and he would have referred her to an orthopedist if he has suspected a labral tear.

32. Via a letter dated December 1, 2025, Defendant upheld the denial of Plaintiff's claim.

33. In support of Defendant's assertion that Plaintiff's condition was due to a pre-existing condition, Defendant referenced one appointment that was outside of the lookback period (August 1, 2024), and two appointments during the lookback period (October 18, 2024 and October 31, 2024).

34. On October 18, 2024, Plaintiff had treated with Dr. Alexander Provost for a chiropractic adjustment and had noted some right hip symptoms following the delivery of her baby.

35. On October 31, 2024, Plaintiff saw Dr. Provost again and noted right lower back pain with potential right hip involvement.

36. Defendant did not point to any diagnosis of femoral acetabular impingement or a labral tear during the lookback period.

37. Defendant did not indicate that any doctor suspected that Plaintiff had femoral acetabular impingement or a labral tear during the lookback period.

38. Defendant did not explain how Plaintiff could have received treatment "**for**" a condition during the lookback period when she was not diagnosed with this condition until well after the lookback period.

39. Defendant failed to consider the issues raised in Plaintiff's appeal.

40. Defendant ignored clear medical evidence of Plaintiff's medical conditions and disability.

41. Defendant did not perform a "full and fair review" of Plaintiff's claim.

42. Defendant failed to notify Plaintiff of the additional material necessary in order for Plaintiff to perfect Plaintiff's claim and an explanation of why that material was necessary.

43. Defendant failed to adequately explain why it rejected specific evidence in Plaintiff's file, including the opinions of her treating providers.

44. Defendant failed to engage in a meaningful dialogue with Plaintiff.

45. Defendant failed to adequately explain its reasons for denying Plaintiff benefits.

46. Defendant conducted a selective review of Plaintiff's medical records.

47. Defendant failed to consider the proper legal standard for pre-existing condition denials.

48. Defendant failed to adequately assess Plaintiff's employability before determining that Plaintiff is not sufficiently disabled to qualify for benefits.

49. At all times material to this complaint, Plaintiff has remained disabled as defined by the Plan.

50. At all times material to this case, the Plan has remained in full force and effect.

51. Defendant's denial of Plaintiff's claim for LTD benefits caused Plaintiff to suffer the loss of benefits and to incur expenses.

52. Plaintiff was also covered under a life insurance policy through Northwestern Mutual.

53. On information and belief, Plaintiff was advised that a life waiver of premium claim would only apply if she was approved for LTD benefits, and she was not given the option to apply for a waiver of premium claim.

**FIRST CAUSE OF ACTION:**
**DENIAL OF BENEFITS IN VIOLATION OF**
**SECTION 502(a)(1)(B) OF ERISA**

54. The preceding paragraphs are reincorporated by reference as though set forth here in full.

55. Plaintiff has been and remains disabled, as that term is defined by the Plan.

56. Defendant's decision to deny Plaintiff's benefits was incorrect, as well as arbitrary and capricious.

57. Defendant interpreted and applied the terms and conditions of the Plan in a manner that is inconsistent with the plain language contained therein.

58. Upon information and belief, Defendant inconsistently interpreted the terms and conditions of the Plan from one case to the next.

59. As both the payer of claims and the adjudicator of LTD claim eligibility, Defendant has an inherent conflict of interest.

60. Defendant's denial of Plaintiff's LTD benefits was "downright unreasonable."

61. For these and other reasons, Defendant wrongfully denied Plaintiff's claim for LTD benefits and Plaintiff is entitled to said benefits pursuant to § 502(a)(1)(B) of ERISA.

**WHEREFORE** the Plaintiff, Dr. Victoria Gokee, demands judgment from the Defendant for the following:

A. Payment of all retroactive LTD benefits owed to Plaintiff under the terms and conditions of the Plan;

B. A declaration of Plaintiff's continued eligibility for all LTD and life insurance waiver of premium benefits under the Plan;

C. Prejudgment interest;

D. Reasonable attorney's fees and costs related to the action; and

E. Such other and further relief that the Court deems just and equitable.

Dated: March 2, 2026.

By: */s/ Brook E. Tylka*
Brook E. Tylka, WI State Bar No. 1126886
Attorney for Plaintiff, Dr. Victoria Gokee
Hawks Quindel, S.C.
409 East Main Street
P.O. Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Email: btylka@hq-law.com